## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

| | |
|---|---|
| LARRY I. MCCLEAN | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| DELAWARE COUNTY HOUSING | : |
| AUTHORITY and | : |
| PHILADELPHIA HOUSING | : |
| AUTHORITY | : |
| Defendants. | : |

**CIVIL ACTION NO. 15-5428**

_____ :

## MEMORANDUM OPINION

**Rufe, J.**                                                              **December 6, 2016**

## I.      Introduction

Plaintiff Larry I. McClean has filed a *pro se* complaint against Defendants Delaware

County Housing Authority ("DCHA") and Philadelphia Housing Authority ("PHA").  Plaintiff

alleges that DCHA: (1) wrongfully included income that should have been excluded to calculate

the amount of his rent for Section 8 housing; (2) wrongfully charged Plaintiff a $52 monthly

utility bill; (3) wrongfully accused Plaintiff of owing DCHA $1,395 in back rent; and (4)

wrongfully terminated Plaintiff's housing choice voucher for Section 8 housing.  Additionally,

Plaintiff claims that PHA knew that DCHA wrongfully included income and that PHA should

have intervened to prevent the alleged wrongful termination of the housing voucher.  Before the

Court are the Motions to Dismiss of DCHA and PHA, which Plaintiff opposes.  Both Defendants

primarily argue that the federal statutes and regulations cited in the complaint do not give rise to

a private right of action.

## II.     Background

### A.  The Housing Act

Because the present motions concern whether the Housing Act provides Plaintiff with a

private right of action, the Court briefly describes the statute and associated regulatory scheme.

The United States Housing Act of 1937 ("Housing Act") authorizes the Department of

Housing and Urban Development ("HUD") to designate federal funds to state housing agencies

to provide safe and affordable housing to low-income citizens.[1]  Section 8 housing was later

added to the Housing Act, and a Federal Choice Voucher Program was established to promote

"economically mixed housing."[2]  The Voucher Program directs state housing agencies to provide

federally subsidized rent payments to landlords on behalf of qualifying low-income tenants.[3]

The Voucher Program requires the tenant to pay a portion of the rent, which is

determined by the state housing agency's calculation of the tenant's adjusted income.[4]  This

calculation is the tenant's annual income minus any exclusions or deductions provided for in the

HUD program requirements.[5]  The state housing agency also determines a reasonable utility

allowance for the tenant based on the number of qualified tenants in the dwelling.[6]  Ultimately,

the state housing agency subsidizes rent payments to cover the amount of the rent minus 30

percent of the tenant's monthly adjusted income, which is the Section 8 "rent ceiling" imposed

by the Housing Act.[7]

---

[1] 42 U.S.C. § 1437.

[2] 42 U.S.C. § 1437f(a), (o).  The Voucher Program helps low-income families secure safe housing by providing assistance payments in accordance with the program regulations.  42 U.S.C. § 1437f(a).

[3] 42 U.S.C. § 1437f; 24 C.F.R. § 982.1(a)(1)-(2).

[4] 42 U.S.C. § 1437f(o)(1); 24 C.F.R. § 5.601, et seq.

[5] 24 C.F.R. § 5.609 (exclusions from annual income); 24 C.F.R. § 5.611 (deductions from annual income).

[6] 42 U.S.C. § 1437f(o)(2)(D).

[7] 42 U.S.C. § 1437f(o)(2)(A)(i).

### B. Factual and Procedural History

Plaintiff alleges the following facts, which are assumed to be true for the purposes of ruling on the motions to dismiss.  For years, Plaintiff participated in the Voucher Program and had his rent subsidized by DCHA.  During that time, Plaintiff received income from an apprenticeship program run by PHA, which was excluded from his income for purposes of calculating his Section 8 subsidized rent payments.[8]  Plaintiff was subsequently terminated from the apprenticeship program.[9]  After Plaintiff's termination, the Bureau of Unemployment Compensation Benefits ("Bureau") conducted an investigation and determined that Plaintiff had been wrongfully terminated.[10]  As a result, the Bureau awarded Plaintiff unemployment compensation in place of his apprenticeship earnings on January 20, 2010.[11]

Over three years later, on October 1, 2013, "DCHA terminated Plaintiff's Section 8 housing voucher and concluded that Plaintiff owed it $1,395 due to the fact that Plaintiff had received income in the form of unemployment compensation."[12]  Plaintiff alleges that DCHA wrongfully included the unemployment compensation as income paid to him by PHA when calculating Plaintiff's rent payments for Section 8 housing.[13]  According to Plaintiff, the unemployment compensation should have been excluded because it was awarded in place of his apprenticeship program earnings, which had been excluded from his calculated income.[14] Further, Plaintiff alleges that DCHA "illegally" took from him a utility allowance for Section 8

---

[8] Second Amended Complaint, at 5.

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] DCHA's Motion to Dismiss Plaintiff's Second Amended Complaint, at 2.

[13] Second Amended Complaint, at 5.

[14] *Id.*  The relevant HUD Regulations state that unemployment compensation should be included in the annual income calculation, 24 C.F.R. § 5.609(b)(5), but earnings from a training program funded by HUD or an apprenticeship program should be excluded, 24 C.F.R. § 5.609(c)(8)(i), (v).

housing for seven years.[15] Plaintiff also alleges that PHA failed to intervene in DCHA's alleged

wrongful termination of his housing choice voucher.[16]

On October 7, 2015, Plaintiff filed a complaint in this Court against DCHA and PHA,

and with leave of the Court, filed an Amended Complaint on November 6, 2015.  PHA then filed

a Motion for a More Definite Statement, which the Court granted, and Plaintiff filed a Second

Amended Complaint on March 24, 2016, to which the motions to dismiss are directed.

## III.    Standard of Review

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the moving party bears the burden

of proving that the plaintiff failed to state a claim of action upon which relief can be granted.[17]

In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"[18]  A claim is plausible on

its face "when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."[19]

Courts in the Third Circuit conduct a two-part analysis when deciding a motion to

dismiss.[20]  "First, the factual and legal elements of a claim must be separated . . . . [and] [t]he

District Court must accept all of the complaint's well-pleaded facts as true, but may disregard

any legal conclusions."[21]  Second, the court must decide whether the facts in the complaint "are

sufficient to show that the plaintiff has a 'plausible claim for relief.'"[22]  The determination of

---

[15] Second Amended Complaint, at 3.

[16] *Id.* at 4.

[17] Fed. R. Civ. P. 12(b)(6).

[18] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).

[19] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).

[20] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

[21] *Id.*

[22] *Id.* at 211 (citing *Iqbal*, 556 U.S. at 679).

whether a claim is plausible is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[23]

Where, as here, a complaint is filed *pro se*, the Court must liberally construe both the complaint and the response to the motion to dismiss.[24]  "[C]ourts should dismiss the complaint for failure to state a claim only if it appears beyond doubt that the [*pro se*] plaintiff can prove no set of facts in support of the claim that would entitle him to relief."[25]

## IV.    Discussion

### A.  DCHA's Motion to Dismiss Will Be Denied

DCHA argues that its motion to dismiss should be granted because Plaintiff does not have a private right of action under the Housing Act or HUD regulations.[26]  For the following reasons, DCHA's motion will be denied.

### 1.  Plaintiff Has Stated a Claim Against DCHA for Violation of the Housing Act Rent Ceiling

42 U.S.C. § 1983 affords individuals a remedy to enforce rights created by federal statutes.[27]  Through Section 1983, individuals may seek to enforce subsections of the Housing Act and associated federal regulations if those regulations define the federal right derived from

---

[23] *Iqbal*, 566 U.S. at 679.

[24] *Singer v. Comm'r of Internal Revenue Serv.*, No. 99-2783, 2000 WL 14874, at *1, n.1 (E.D. Pa. Jan. 10, 2000).

[25] *Pojilenko v. Goshow*, No. 02-8401, 2003 WL 1702556, at *1 (E.D. Pa. Mar. 31, 2003).

[26] In the alternative, DCHA argues that even if Plaintiff had a private right of action under the Housing Act or the regulations, the motion to dismiss should be granted because Plaintiff's income calculation properly included unemployment compensation.  This argument will be more properly addressed with the benefit of a developed record.

[27] *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002).  Section 1983 allows a plaintiff to bring a claim against anyone who, under color of state law, deprives the plaintiff of "any rights, privileges, or immunities secured by the Constitution and laws," 42 U.S.C. § 1983, and "merely provides a mechanism for enforcing individual rights secured elsewhere."  *Gonzaga Univ.,* 536 U.S. at 285 (internal quotations omitted).

the federal statute.[28]  Where, like here, a plaintiff cites the general policy provision of the

Housing Act (Section 1437), courts in this District have determined whether the plaintiff has a

private right of action by looking to subsections of Section 1437 that pertain to the facts alleged

in the complaint.[29]  Unless a court is able to ascertain a subsection of Section 1437 that creates a

private right of action, the complaint will be dismissed with prejudice because Section 1437

itself "clearly speaks in terms of general policy, and it has consistently been held not to create a

private right."[30]  The key is whether "the statute provide[s] a specific entitlement to individuals"

or whether it relates only to an "organizational mandate."[31]

Two Housing Act subsections are relevant here.  Section 1437a, commonly referred to as

the Brooke Amendment, sets a rent ceiling for public housing that individuals have a private

right to enforce.[32]  Section 1437f(o)(2) sets forth a rent ceiling specifically for Section 8 housing

that individuals may enforce.[33]

The Supreme Court of the United States has held that a plaintiff may bring a Section

1983 claim to enforce the rent ceiling in Section 1437a against a public housing authority.[34]  In

*Wright v. City of Roanoke Redevelopment and Housing Authority*, the plaintiff brought a claim

against the public housing authority for overcharging utilities in violation of the rent ceiling set

---

[28] *Wright v. City of Roanoke Redevelopment and Hous. Auth.*, 479 U.S. 418, 429-30 (1987); s*ee also Three Rivers Ctr. for Indep. Living, Inc. v. Hous. Auth. of Pittsburgh*, 382 F.3d 412, 424 (3d Cir. 2004) ("Under Section 1983 . . . regulations give rise to a right of action only insofar as they construe a personal right that a statute creates.").

[29] *Reynolds v. PBG Enter.*, No. 10-4373, 2011 WL 2678589, at *7 (E.D. Pa. 2011) (relating to lead paint exposure); *McField v. Phila. Hous. Auth.*, 992 F. Supp. 2d 481, 487 (E.D. Pa. 2014) (same).

[30] *McField*, 992 F. Supp. 2d at 487.

[31] *Id.* at 488 (quoting *Wright*, 479 U.S. at 430) (internal citations omitted).

[32] *Wright*, 479 U.S. at 429-30.

[33] *Johnson vs. Hous. Auth. of Jefferson Parish*, 442 F.3d 356, 357 (5th Cir. 2006); *DeCambre v. Brookline Hous. Auth.*, 826 F.3d 1, 12-13 (1st Cir. 2016).

[34] *Wright*, 479 U.S. at 425.

forth in Section 1437a.[35]  The district court had granted summary judgment in favor of the public

housing authority, holding that the Housing Act did not create a private right of action, and the

Court of Appeals for the Fourth Circuit affirmed.[36]  The Supreme Court reversed, holding that

"nothing in the Housing Act or the Brooke Amendment evidences that Congress intended to

preclude petitioner's Section 1983 claim against [the public housing authority]."[37]

Although the Third Circuit has not addressed enforcement of the Section 8 rent ceiling,

other circuits have held that a plaintiff can bring a Section 1983 claim to enforce the rent ceiling

set forth in Section 1437f(o)(2) for Section 8 housing.[38]  Based on these cases, Plaintiff has

stated a claim for relief by asserting, pursuant to Section 1983, that DCHA, as a state actor,

violated the rent ceiling in the Housing Act by incorrectly calculating his annual income and

thereby overcharging Plaintiff for Section 8 housing rent.[39]

### 2.  Plaintiff Has Stated a Claim Against DCHA to Enforce HUD Regulations

DCHA argues that HUD regulations do not create private rights enforceable under

Section 1983.[40]  HUD regulations specify, *inter alia*, the income used to determine Section 8 rent

---

[35] *Id.* at 419.

[36] *Id.*

[37] *Id.* at 429; *see McDowell v. Phila. Hous. Auth.*, 423 F.3d 233, 236 (3d Cir. 2005) (recognizing a Section 1983 claim against a public housing authority to enforce Section 1437a).

[38] *See Johnson*, 442 F.3d at 361 (holding that "Congress intended to create enforceable rights in participating [Section 8] tenants to the same extent as it did in enacting the statute implicated in *Wright*."); *DeCambre,* 826 F.3d at 1, 13-14 (1st Cir. 2016) (finding that that Section 1437f(o)(2), like Section 1437a, confers a private right of action for individuals to enforce the mandatory Section 8 rent ceiling and noting that "no circuit court has yet declined to apply *Wright* to Section 8's rent ceiling provision.").

[39] DCHA's contention that the Housing Act does not create private rights enforceable under Section 1983 is misguided.  DCHA fails to mention *Wright*, instead citing to *McField* and *Reynolds*.  But unlike this case, both *McField* and *Reynolds* involved claims against public housing authorities for exposure to lead-based paint, and the courts did not find a subsection in the Housing Act that created a private right of action for lead-based paint exposure.  Here, Plaintiff set forth facts accusing DCHA of overcharging rent and a utility allowance, and Section 1437f(o)(2) provides him a private right of action.

[40] DCHA relies upon *Spieth v. Bucks County Housing* Authority, 594 F. Supp. 2d 584, 591 (E.D. Pa. 2009), in support.  However, the plaintiff in *Spieth* sought to enforce a discretionary HUD regulation which "merely authorizes a HUD field office to approve an exception payment, it does not require such a payment."  *Id.*  In

by outlining numerous inclusions, exclusions, and deductions.[41]  Courts in this District have
recognized claims to enforce HUD regulations.[42]  For example, the court in *Hurt v. Philadelphia
Housing Authority*, in ruling on a motion to dismiss, stated that the cited HUD regulations
created "specific, affirmative obligations akin to the rent ceiling provision at issue in *Wright*"
and further stated, "[b]ecause they do not suffer from the general policy language vagueness of
§ 1437, these regulatory provisions create rights in plaintiffs enforceable under § 1983." [43]
Although the Third Circuit has not addressed Section 1983 claims brought under the Housing
Act to enforce HUD regulations governing calculation of income to determine Section 8 rent
payments, the law in other circuits is in agreement.[44]  For these reasons, Plaintiff has also stated
a claim to enforce 24 C.F.R. § 5.609(c)(8)(i) and (v).

### B.  PHA's Motion to Dismiss Will Be Granted

PHA argues that Plaintiff has failed to set forth any facts from which the Court can infer
that PHA violated a federal right.  The Court agrees.  Plaintiff has not alleged that PHA
wrongfully calculated his annual income for Section 8 payments, or that PHA wrongfully

---

contrast, Plaintiff cites a HUD regulation that creates a mandatory set of inclusions and exclusions for the annual income calculation.  *See* 24 C.F.R. § 5.609(c)(8)(i), (v) (excluding "[a]mounts received under training programs funded by HUD" and income "received under employment training programs" from the annual income calculation to determine rent).

[41] Subsections of the Housing Act governing family income include: 24 C.F.R. §§ 5.609, 5.611, 5.612, 5.613, 5.615, and 5.617.

[42] *See Hurt v. Phila. Hous. Auth.*, 806 F. Supp. 515, 525 (E.D. Pa. 1992); *see also Morris v. Phila. Hous. Auth.*, No. 95-CV-6650, 1996 WL 167615, at \*3 (E.D. Pa. Apr. 10, 1996), *aff'd*, 106 F.3d 386 (3d Cir. 1996) (ruling on motions for summary judgment, and stating, "[w]e find that the mandatory language of this [HUD] regulation is sufficient to confer a tangible right to plaintiff."); *Caldwell v. Philadelphia Hous. Auth.*, No. CIV. A. 95-CV-2069, 1995 WL 631665, at \*3 (E.D. Pa. Oct. 27, 1995) (citation and quotation omitted) (in granting plaintiff's motion for summary judgment, holding, "the [HUD] regulation in this case, which has the force and effect of law, is sufficiently specific to create an enforceable right under § 1983.").

[43] *Hurt*, 806 F. Supp. at 525-26.  The court noted that "[i]t does not matter that the obligations at issue are created by regulation rather than by statute."  *Id.* at 537, n.14.

[44] *See DeCambre,* 826 F.3d at 3-4 ("As in *Wright*, HUD regulations flesh out the contours of the statutory right, rendering that right sufficiently specific and definite to qualify as enforceable." (internal quotations omitted)); *Johnson*, 442 F.3d at 362-63 ("The Supreme Court's holding in *Wright*[,] that Congress intended for the complaining tenants to have an enforceable right under the Housing Act and thus be able to challenge the calculation of the utility allowance schedule, applies with equal force to the instant case.").

terminated his Section 8 housing voucher. Plaintiff only alleges that PHA "was well aware that these [unemployment compensation] benefits were supposed to be excluded income," and that PHA "knew that these benefits were awarded to [Plaintiff] in place of [Plaintiff's] excluded apprenticeship earnings."[45] Plaintiff argues that PHA is "actually responsible for this entire matter" because PHA "abandoned" Plaintiff when Plaintiff attempted to rectify his annual income calculation.[46]

However, none of the statutes cited by Plaintiff creates an obligation that PHA, as opposed to DCHA, failed to fulfill.[47] The court therefore will grant PHA's motion to dismiss. Because Plaintiff has amended his complaint twice already and because it appears that any further amendment would be futile, the dismissal is with prejudice.

## V. Conclusion

For the reasons stated above, DCHA's motion to dismiss will be denied and PHA's motion to dismiss will be granted. An appropriate order follows.

---

[45] Second Amended Complaint, at 4.

[46] *Id.*

[47] *Hurt*, 806 F. Supp. at 519.