# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LARRY I. MCCLEAN,**  :<br>    **Plaintiff,**  :<br> :<br>v.  :<br> :<br>**DELAWARE COUNTY HOUSING**  :<br>**AUTHORITY,**  :<br>    **Defendant.**  : | **CIVIL ACTION NO. 15-5428** |

## MEMORANDUM OPINION

**Rufe, J.**                                        **March 28, 2018**

### I.   INTRODUCTION

    Plaintiff Larry I. McClean initiated a *pro se* civil rights action under 42 U.S.C. § 1983 against Defendant Delaware County Housing Authority ("DCHA"), alleging that DCHA violated United States Housing Act of 1937 provisions and Department of Housing and Urban Development ("HUD") regulations by: (1) wrongfully including income that should have been excluded to calculate the amount of his rent for Section 8 housing; (2) wrongfully withholding from Plaintiff a $50 monthly utility reimbursement; (3) wrongfully accusing Plaintiff of owing DCHA $1,395 in back rent; and (4) wrongfully terminating Plaintiff's housing voucher for Section 8 housing. DCHA now moves for summary judgment, arguing that Plaintiff's claims are barred by the applicable statute of limitations or in the alternative, that there was no violation of Housing Act provisions or HUD regulations. For reasons that follow, the motion for summary judgment will be granted in part and denied in part.

## II. BACKGROUND

### A. The Housing Act

Because the present motion concerns purported violations of the Housing Act and HUD regulations, the Court briefly describes the statute and associated regulatory scheme.

The Housing Act authorizes HUD to designate federal funds to state housing agencies to provide safe and affordable housing to low-income citizens.[1] The Housing Act now includes what is known as Section 8 housing, and a Federal Choice Voucher Program was established to promote "economically mixed housing."[2] The voucher program directs state housing agencies to provide federally subsidized rent payments to landlords on behalf of qualifying low-income tenants.[3]

The voucher program requires the tenant to pay a portion of the rent, which is determined by the state housing agency's calculation of the tenant's adjusted income.[4] This calculation is the tenant's annual income minus any exclusions or deductions provided for in the HUD program requirements.[5] The state housing agency also determines a reasonable utility allowance for the tenant based on the number of qualified tenants in the dwelling.[6] Ultimately, the state housing agency subsidizes rent payments to cover the amount of the rent minus 30 percent of the tenant's monthly adjusted income, which is the Section 8 "rent ceiling" imposed by the Housing Act.[7]

---

[1] 42 U.S.C. § 1437.

[2] 42 U.S.C. § 1437f(a), (o). The voucher program helps low-income families secure safe housing by providing assistance payments in accordance with the program regulations. 42 U.S.C. § 1437f(a).

[3] 42 U.S.C. § 1437f; 24 C.F.R. § 982.1(a)(1)-(2).

[4] 42 U.S.C. § 1437f(o)(1); 24 C.F.R. § 5.601, *et seq.*

[5] 24 C.F.R. § 5.609 (exclusions from annual income); 24 C.F.R. § 5.611 (deductions from annual income).

[6] 42 U.S.C. § 1437f(o)(2)(D).

[7] 42 U.S.C. § 1437f(o)(2)(A)(i).

### B. Factual and Procedural History

Unless otherwise noted, the following facts are undisputed. In June 2007, Plaintiff received a housing voucher through the Philadelphia Housing Authority ("PHA"). Plaintiff then moved to Delaware County, Pennsylvania, where he participated in the voucher program and had his rent subsidized by DCHA from November 2007 until October 2013. During this six-year period, Plaintiff encountered problems with his rental and utility payments.

#### 1. Utility Payments

First, Plaintiff experienced problems with his utility payments. As noted, the state housing agency determines a reasonable utility allowance for each household based on the number of qualified tenants in the dwelling.[8] During Plaintiff's tenancy, his utility allowance ranged from $52 to $56 per month, which Plaintiff contends he should have received, but instead he received a utility reimbursement of only $2 to $6 each month.[9] In June 2008, Plaintiff contacted counsel from Community Legal Services of Philadelphia and Legal Aid of Southeastern Pennsylvania in an attempt to work with DCHA to receive the full utility allowance.[10] Counsel contacted DCHA about the utility allowance and reimbursement discrepancies. However, it does not appear that Plaintiff or counsel was successful in securing a larger monthly utility reimbursement. Throughout his tenancy, Plaintiff continued to receive a reimbursement of $2 to $6 per month. Plaintiff now alleges DCHA illegally denied full reimbursement for six years.[11]

---

[8] 42 U.S.C. § 1437f(o)(2)(D).

[9] Def.'s Statement of Facts at ¶¶ 10, 34-35, 57-58. DCHA argues that Plaintiff would have received the larger reimbursement if he had applied for and received a hardship exemption. *Id.* at ¶ 12.

[10] *Id.* at ¶ 11.

[11] Second Am. Compl. at 3.

3

## 2. Rental Payments

Second, Plaintiff asserted issues with his rental payments. Although Plaintiff initially was not required to pay rent, his rent increased to $279 per month for a period of time after DCHA discovered that Plaintiff was receiving unemployment compensation.

In 2009, Plaintiff started working in the Moving to Work ("MTW") apprenticeship program, where his earnings as an apprentice were excluded from his income for purposes of calculating his subsidized rent payments.[12] Plaintiff successfully completed his training, and was hired by the Local 690 Union as a plumber's apprentice.[13] Plaintiff, however, was terminated from the Union.[14] After his termination, the Bureau of Unemployment Compensation Benefits ("Bureau") conducted an investigation and determined that Plaintiff had been wrongfully discharged.[15] As a result, the Bureau awarded Plaintiff unemployment compensation in place of his earnings from the Union.[16] Plaintiff received unemployment compensation from January 2010 to September 2011. Plaintiff contends that even though he was terminated from the Union, he remained enrolled in and "actively participated" in the MTW apprenticeship program.[17]

Upon learning of Plaintiff's unemployment compensation, DCHA notified Plaintiff that his rent would be increasing to $279 per month, effective May 1, 2010.[18] Plaintiff complained about the increased rent to DCHA, which issued a letter to him explaining that, pursuant to HUD regulations, Plaintiff's income level for calculating his rental payments included "payments in

---

[12] Def.'s Statement of Facts at ¶ 13.

[13] Pl.'s Supplemental Statement of Facts at ¶ 9.

[14] *Id.* at ¶ 11.

[15] Pl.'s Resp. to Def.'s Mot. for Summ. J. at 3.

[16] Def.'s Statement of Facts at ¶¶ 17-18.

[17] Pl.'s Supplemental Statement of Facts at ¶¶ 5-6, 13-14.

[18] *Id.* at ¶¶ 21-22.

lieu of earnings, such as unemployment compensation."[19] Accordingly, Plaintiff's rent needed to be adjusted due to his unemployment compensation. Plaintiff continued to contest the recalculated rental obligation, so DCHA delayed imposing the increased rental payments and scheduled an informal hearing at which Plaintiff could appeal his obligation.[20]

In February 2011, DCHA and Plaintiff attended an informal appeals hearing to determine his rental obligation.[21] Plaintiff argued that when unemployment compensation benefits are awarded in place of excluded apprenticeship earnings, they should not be included as income, particularly when Plaintiff remained enrolled in the MTW apprenticeship program.[22] The hearing officer, however, determined that Plaintiff's unemployment compensation benefits were includable as income for purposes of calculating his rent pursuant to HUD regulations.[23] Plaintiff continued to dispute his obligation following the hearing and did not make the rental payments, so DCHA continued to pay Plaintiff's portion of his rent during this period to ensure that his tenancy would not be jeopardized.[24]

A few months later, DCHA notified Plaintiff that he would be required to repay the sum of $1,395.00 to DCHA, which represented five months of rent (from January to May 2011) that DCHA contended it had overpaid on his behalf. Plaintiff failed to reimburse DCHA or sign a reimbursement agreement. Instead, he continued to complain that he should not be required to pay this amount.

---

[19] Def.'s Mot. for Summ. J., Ex. O.

[20] Def.'s Statement of Undisputed Facts at ¶ 31.

[21] *Id.* at ¶ 40. Plaintiff was represented by counsel at the appeals hearing. *Id.* at ¶ 41.

[22] *Id.* at ¶ 43.

[23] *Id.* at ¶ 45.

[24] *Id.* at ¶ 47.

In September 2011, Plaintiff attended an annual meeting with DCHA to re-examine his financial obligations.[25] At the meeting, he explained that his unemployment compensation would be terminated at the end of the month. He also requested to "port" back to PHA,[26] but was informed that he would not be allowed to do so until he settled his outstanding debt (*i.e.*, $1,395.00).[27]

For the next two years (from October 2011 until October 2013), Plaintiff's rent was "re-calculated based upon zero income,"[28] meaning that Plaintiff was not required to pay rent for this period. In September 2013, DCHA sent Plaintiff a letter informing him that he must repay the $1,395.00 debt or execute a reimbursement agreement.[29] The letter also stated that if Plaintiff wanted to challenge this debt, he could come into DCHA's office or submit a letter requesting an explanation and a hearing by October 16, 2013.[30] The letter warned that if Plaintiff failed to do so, his housing voucher would be terminated effective October 31, 2013.[31] Despite this warning, Plaintiff failed to pursue either of these options, and on October 31, 2013, DCHA terminated Plaintiff's housing voucher.[32] On November 1, 2013, DCHA mailed Plaintiff a letter informing him that his housing voucher was terminated.[33]

---

[25] *Id.* at ¶ 52.

[26] "Port" or "Portability" refers to an individual or family's ability to move from one public housing authority jurisdiction to another housing authority jurisdiction.

[27] *Id.* at ¶¶ 53-56, 60.

[28] *Id.* at ¶ 56.

[29] *Id.* at ¶ 69.

[30] *Id.*

[31] *Id.*

[32] *Id.* at ¶¶ 70-72.

[33] Pl.'s Supplemental Statement of Facts at ¶ 35.

On October 1, 2015, Plaintiff filed a complaint against DCHA and PHA,[34] alleging that DCHA wrongfully included his unemployment compensation as income when calculating his rent, and unlawfully withheld his full utility allowance.[35] The claims against PHA were dismissed by the Court.[36] After completing discovery, DCHA moves for summary judgment.

## III. STANDARD OF REVIEW

Upon motion of a party, summary judgment is appropriate if the "materials in the record" show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[37] Summary judgment may be granted only if the moving party persuades the district court that "there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party."[38] A fact is "material" if it could affect the outcome of the suit, given the applicable substantive law.[39] A dispute about a material fact is "genuine" if the evidence presented "is such that a reasonable jury could return a verdict for the nonmoving party."[40]

In evaluating a summary judgment motion, a court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor.[41]

---

[34] Plaintiff filed his complaint along with an application to proceed *in forma pauperis* on October 1, 2015. The Complaint was docketed on October 7, 2015, after his application to proceed *in forma pauperis* was granted. *See Urrutia v. Harrisburg Cty. Police Dep't*, 91 F.3d 451, 458 (3d Cir. 1996).

[35] Second Am. Compl. at 3.

[36] As the Court previously held, Plaintiff may sue under Section 1983 to enforce sections of the Housing Act and associated HUD regulations. *McClean v. Delaware Cty. Housing Auth.*, 220 F. Supp. 3d 607, 612-13 (E.D. Pa. 2016).

[37] Fed. R. Civ. P. 56(a), (c)(1)(A).

[38] *Miller v. Ind. Hosp.*, 843 F.2d 139, 143 (3d Cir. 1988) (citations omitted).

[39] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[40] *Id.*

[41] *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005) (citation omitted).

Further, a court may not weigh the evidence or make credibility determinations.[42] Nevertheless, the party opposing summary judgment must support each essential element of the opposition with concrete evidence in the record.[43] "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[44] This requirement upholds the "underlying purpose of summary judgment [which] is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense."[45] Therefore, if, after making all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine dispute as to any material fact, summary judgment is appropriate.[46]

## IV. DISCUSSION

### A. Statute of Limitations

DCHA contends that Plaintiff's claims are barred by the applicable statute of limitations. It is well established that the statute of limitations for a Section 1983 claim arising in Pennsylvania is two years.[47] "[T]he limitations period begins to run from the time the plaintiff knew, or had reason to know, of the injury which constitutes the basis of the Section 1983 claim."[48] This is an objective inquiry, and courts "ask not what the plaintiff actually knew but what a reasonable person should have known."[49]

---

[42] *Boyle v. Cty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (citation omitted).

[43] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

[44] *Anderson*, 477 U.S. at 249-50 (citations omitted).

[45] *Walden v. Saint Gobain Corp.*, 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004) (citing *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976)).

[46] *Celotex*, 477 U.S. at 322; *Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 83 (3d Cir. 1987).

[47] *Bynum v. Trustees of Univ. of Pa.*, 115 F. Supp. 3d 577, 585 (E.D. Pa. 2015) (citing *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009); *Kost v. Kozakiewicz*, 1 F.3d 176, 190 (3d Cir. 1993)).

[48] *Bynum*, 115 F. Supp. 3d at 585 (citing *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 919 (3d Cir. 1991)).

[49] *Kach*, 589 F.3d at 634.

### 1. Plaintiff's Utility Reimbursement Claim Is Time-Barred

DCHA argues that Plaintiff's utility reimbursement claim was filed too late. The record demonstrates that as early as 2008, DCHA withheld a $50 monthly utility reimbursement from Plaintiff, despite the fact that he qualified for a maximum utility allowance of $52 per month based on the size of his household. Because Plaintiff received only $2 per month from DCHA as a reimbursement, Plaintiff was forced to pay the remainder of the monthly utility bill himself. Plaintiff thus knew of his injuries—*i.e.*, his overpayment of monthly utility bills and alleged unlawful withholding of the maximum utility reimbursement—in 2008. Moreover, the evidence shows that Plaintiff was aware of his injuries in June 2008 when he worked with counsel to recoup this full reimbursement from DCHA. The counseled attempt was unsuccessful, and Plaintiff continued to "overpay" for his monthly utility bill because DCHA withheld $50 per month in his utility allowance that Plaintiff believed he should have received.

Thus, a reasonable person in Plaintiff's position should have known of the allegedly unlawful withholding in 2008, when Plaintiff was forced to pay the remainder of each monthly utility bill. Therefore, Plaintiff's Section 1983 claim based on his utility bill began to accrue by June 2008 at the latest. As a result, any utility-based claim raised after June 2010 is barred by the two-year statute of limitations. Furthermore, Plaintiff had not received any utility reimbursement in the two years immediately preceding the filing of his complaint on October 1, 2015, since his housing voucher had been terminated in 2013 and he was no longer living in Section 8 housing. Thus, the Court concludes that this claim is time-barred.[50]

---

[50] Plaintiff does not contend that the two-year statute of limitations should be tolled with respect to his utility reimbursement claim for the final month of October 2013 when his tenancy was last secured in part by the Section 8 housing voucher, and concedes that he no longer is "seeking relief under Section 1983 related to these issues." Pl.'s Supplemental Mem. at 14. Instead, his Section 1983 claims are "entirely directed" at the termination of his Section 8 housing benefits. *Id.*

## 2. Plaintiff's Rental Payment Claims Are Not Time-Barred

DCHA also argues that Plaintiff's claims based on problems with his rental payments are time-barred. Viewing the facts in the light most favorable to Plaintiff as the non-moving party, however, Plaintiff's Section 1983 claims regarding his rent accrued on November 1, 2013, when he received notice that his housing voucher was terminated. At that time Plaintiff knew, and a reasonable person would have known, that he suffered injuries. Although DCHA contends that Plaintiff had reason to know of his injuries in 2010 when his rent payments were recalculated, Plaintiff did not actually pay the increased rental obligations, and thus did not suffer any injury until the housing voucher was terminated. Moreover, a reasonable person in Plaintiff's position may not have known that he was injured because DCHA continued to pay his portion of the rent during the period he disputed the back-due payment.[51] Therefore, Plaintiff had two years from November 1, 2013 to raise his Section 1983 claims. Plaintiff did so by filing his complaint on October 1, 2015, within the statute of limitations period.[52] DCHA's argument that these claims are time-barred is unpersuasive.

## B. Summary Judgment Will Not Be Granted on Plaintiff's Rental Payment Claims

DCHA argues that summary judgment should be granted as a matter of law as to Plaintiff's remaining Section 1983 claims based on his rental payments. Plaintiff's remaining rent claims allege that DCHA: (a) wrongfully included income that should have been excluded to calculate the amount of his rent; (b) wrongfully accused Plaintiff of owing DCHA $1,395 in back rent; and (c) wrongfully terminated Plaintiff's housing voucher. These three claims are based on

---

[51] *See Bynum*, 115 F. Supp. 3d at 585 ("A cause of action accrues at the time of the last event necessary to complete the tort—usually when the plaintiff suffers an injury.") (citing *Kach*, 589 F.3d at 634).

[52] *See Swift v. McKeesport Housing Auth.*, No. 08-275, 2009 WL 3856304, at *6 (W.D. Pa. Nov. 17, 2009) ("The earliest date plaintiff could have been apprised of defendant's final determination with respect to plaintiff's Section 8 voucher, however, would have been upon the receipt of the [housing authority's] letter to plaintiff, dated March 14, 2006. Until that time, plaintiff could not have known whether defendant was going to reconsider its decision to terminate plaintiff's Section 8 voucher.").

Plaintiff's theory that his unemployment compensation benefits should not be included as income when they are awarded in place of excluded apprenticeship earnings, particularly when he continued to be enrolled and participate in the MTW apprenticeship program.

As discussed, the Housing Act's voucher program requires the tenant to pay a portion of his rent, which is determined by the state housing agency's calculation of the tenant's adjusted income.[53] Pursuant to HUD regulations, specifically 24 C.F.R. § 5.609(c)(8)(v), "annual income" for purposes of calculating a Section 8 tenant's rental obligation does not include:

> Incremental earnings and benefits resulting to any family member from participation in qualifying State or local employment training programs (including training programs not affiliated with a local government) and training of a family member as resident management staff. Amounts excluded by this provision must be received under employment training programs with clearly defined goals and objectives, and are excluded only for the period during which the family member participates in the employment training program[.][54]

However, "annual income" does include: "[p]ayments in lieu of earnings, such as unemployment and disability compensation, worker's compensation and severance pay (except as provided in paragraph (c)(3) of this section)."[55]

Plaintiff asserts that he was continuously "enrolled and participating" in the MTW program after his termination from the Union;[56] therefore, he argues that his unemployment compensation should be excluded from his income as a "benefit[ ] resulting [from] participation in" the MTW program.[57] He has identified evidence such as his own affidavit, and correspondence he received from the PHA, which suggest his continued participation in the

---

[53] 42 U.S.C. § 1437f(o)(1); 24 C.F.R. § 5.601, *et seq.*

[54] 24 C.F.R. § 5.609(c)(8)(i),(v).

[55] 24 C.F.R. § 5.609(b)(5). 24 C.F.R. § 5.609(c)(3) exempts from annual income: "Lump-sum additions to family assets, such as inheritances, insurance payments (including payments under health and accident insurance and worker's compensation), capital gains and settlement for personal or property losses (except as provided in paragraph (b)(5) of this section)."

[56] Pl.'s Supplemental Statement of Facts at ¶ 34.

[57] 24 C.F.R. § 5.609(c)(8)(v).

MTW program after his termination from the Union.  Defendant, however, contends that Plaintiff was no longer participating in the MTW program after he was terminated from the Union, and as such, his unemployment compensation was properly included as income. Plaintiff's continued participation in the MTW program, therefore, is a disputed fact that precludes summary judgment as to Plaintiff's rental payment claims.

V.      CONCLUSION

For the reasons stated above, DCHA's motion for summary judgment will be granted in part and denied in part.  An appropriate order follows.